## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

CHRISTOPHER L AMERSON,      :
     :
     **Plaintiff,**      :
     :
     **VS.**      :      **NO. 5:23-CV-268-TES-CHW**
     :
WARDEN T SMITH, *et al.*,      :
     :
     **Defendants.**      :
_____      :

## ORDER AND RECOMMENDATION

Presently pending before the Court are Plaintiff's motion for a ruling on his leave to proceed *in forma pauperis* and Recast Complaint (ECF No. 15) and his Objections to the Recommendation to deny leave to proceed *in forma pauperis* and dismiss this action without prejudice (ECF No. 16). Based on the allegations in Plaintiff's Objections, the November 9, 2023 Recommendation (ECF No. 14) is **WITHDRAWN**, and the Court has conducted a new screening of Plaintiff's claims in light of the allegations made in those Objections. *See Newsome v. Chatham Cnty. Det. Ctr.*, 256 F. App'x 342, 344 (11th Cir. 2007) (per curiam) (objections to recommendation of dismissal that contained additional allegations against dismissed defendants should have been liberally construed as motion to amend complaint and granted). Based on this review, Plaintiff's motions to proceed *in forma pauperis* (ECF Nos. 3, 13) are **GRANTED**, and the following claims shall proceed for further factual development: (1) claims that Defendants Lewis, Williams, Bolgan, Bradford, Jefferies, Ingram, Kimbro, Harrison, and Smith were deliberately indifferent to

Plaintiff's Hepatitis B diagnosis; (2) retaliation claim against Defendant Mitchal; and (3) claims that Defendants Smith and Jefferies were deliberately indifferent to Plaintiff's safety at Macon State Prison.  It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.**  Plaintiff's motion for a ruling on his pending motions (ECF No. 15) is **DENIED as moot.**

## MOTIONS TO PROCEED IN FORMA PAUPERIS

Federal law bars a prisoner from bringing a civil action in federal court *in forma pauperis*

> if [he] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  This is known as the "three strikes provision."  Under § 1915(g), a prisoner incurs a "strike" any time he has a federal lawsuit or appeal dismissed on the grounds that it is (1) frivolous, (2) malicious, or (3) fails to state a claim.  *See Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999); *see also Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1283-84 (11th Cir. 2016) (confirming that "these three grounds are the *only* grounds that can render a dismissal a strike").  Once a prisoner incurs three strikes, his ability to proceed *in forma pauperis* in federal court is greatly limited: leave to proceed *in forma pauperis* may not be granted unless the prisoner is under imminent danger of serious physical injury.  *Medberry*, 185 F.3d at 1192.

A review of court records on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") database reveals that Plaintiff has filed multiple lawsuits,

and at least three of his complaints have been dismissed as frivolous, malicious, or for failure to state a claim and constitute strikes under § 1915(g).  *See, e.g., Amerson v. Deberry*, Order Dismissing Compl., ECF No. 15 in Case No. 1:20-cv-03326-LMM (N.D. Ga. Nov. 3, 2020) (adopting recommendation to dismiss pursuant to 28 U.S.C. § 1915A); *Amerson v. Allen*, Order Dismissing Compl., ECF No. 35 in Case No. 6:18-cv-00062-JRH-BWC (S.D. Ga. Mar. 25, 2019) (adopting recommendation to dismiss as abuse of judicial process); *Amerson v. Allen*, Order Dismissing Compl., ECF No. 18 in Case No. 6:17-cv-00156-JRH-BWC (M.D. Ga. July 23, 2018) (adopting recommendation to dismiss as abuse of judicial process); *Amerson v. Allen*, Order Dismissing Appeal, ECF No. 13 in Appeal No. 19-11379 (11th Cir. Aug. 7, 2019) (three judge panel dismissing appeal as frivolous).[1] Plaintiff is thus barred from pursuing this action *in forma pauperis* unless he is in imminent danger of serious physical injury.  28 U.S.C. § 1915(g).  To qualify for this exception, a prisoner must allege specific facts that describe an "ongoing serious physical injury," or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Sutton v. Dist. Attorney's Office*, 334 F. App'x 278, 279 (11th Cir. 2009) (per curiam) (internal quotation marks omitted).  Complaints of past injuries are not sufficient.  *See Medberry*, 185 F.3d at 1193.  Vague and unsupported claims of possible dangers likewise do not suffice.  *See White v. State of Colo.*, 157 F.3d 1226, 1231 (10th Cir. 1998).  The

---

[1] The Eleventh Circuit has held that a dismissal for abuse of the judicial process "is precisely the type of strike that Congress envisioned when drafting section 1915(g)." *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 214 (2007).

exception to § 1915(g) is to be applied only in "genuine emergencies," when (1) "time is pressing," (2) the "threat or prison condition is real and proximate," and (3) the "potential consequence is serious physical injury." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

Plaintiff's claims arise from his incarceration at the Reidsville, Hancock, and Macon State Prisons. Recast Compl. 5, ECF No. 12. According to the Recast Complaint, which is the operative pleading in this action, Plaintiff's claims center on his allegations that he is not being properly treated for a Hepatitis B infection and that he was assaulted by other inmates at Hancock State Prison. *Id.* at 6-12. Plaintiff's Objections allege that he is in imminent danger of serious physical injury at Macon State Prison, where he is currently housed, because he is still not receiving proper medical treatment for his Hepatitis infection. Objs. 3-5, ECF No. 16. In addition, Plaintiff claims he is in imminent danger of serious physical injury because Macon State Prison officials placed him in the same cell with an inmate who has "close ties" with the inmates who attacked Plaintiff at Hancock State Prison. *Id.* at 6. Plaintiff further contends that his cellmate at Macon State Prison is currently "working with Blood orderlies" and prison staff and has also "attempted to help blood inmate[s] take away property of [Plaintiff's] that lead to a physical fight." *Id.* Although it is unclear whether Plaintiff is still housed in the same cell as this particular inmate, Plaintiff has at least alleged that he is still in the same building as Plaintiff. *See id.* Given these allegations, and the seriousness of the assaults that are alleged to have occurred, the Court cannot conclusively determine that Plaintiff is not in imminent danger of serious physical injury at this time. *See, e.g.,* Recast Compl. 10-11, ECF No. 12

4

(Plaintiff hospitalized as a result of injuries sustained in assault); Objs. 6, ECF No. 16 (Plaintiff suffered broken finger in altercation).  As such, § 1915(g) does not prevent Plaintiff from proceeding *in forma pauperis* in this action.

A review of Plaintiff's submissions also demonstrates that he is presently unable to pay the cost of commencing this action.  His applications to proceed *in forma pauperis* (ECF No. 3, 13) are therefore **GRANTED**.  However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee.  28 U.S.C. § 1915(b)(1).  If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.  If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.  Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee.  28 U.S.C. § 1915(b)(4).  In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I.    Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.  The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration.  It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor

custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.  28 U.S.C. § 1915(b)(2).  In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.  It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.   Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.  Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.  The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.  Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

**PRELIMINARY REVIEW OF PLAINTIFF'S RECAST COMPLAINT**

## I.      Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.  Both statutes apply in this case, and the standard of review is the same.  When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted).  A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.   Factual Allegations

As noted above, Plaintiff's claims arise from his imprisonment within the Georgia Department of Corrections system over the last several years. Recast Compl. 5, ECF No. 12. According to the Recast Complaint, Plaintiff asked to be tested for hepatitis in 2017 while at the Reidsville State Prison because "items of some sort [were] being put in [his] meals that was causing [him] issues." *Id.*[2]  A physician's assistant at Reidsville

---

[2] Plaintiff mentions conduct that occurred at Reidsville State Prison, but he does not name any individuals from Reidsville State Prison as Defendants in this action.

recommended that Plaintiff be tested for Hepatitis A, B, and C as well as sexually transmitted diseases. *Id.* In May of 2017, Plaintiff was diagnosed with Hepatitis B. *Id.* at 6-7. The Reidsville physician assistant told Plaintiff that he did not require any medication because the infection would clear on its own, but it could take six months or longer to do so. *Id.* at 7.

Around the same time, Plaintiff was also diagnosed with an infection in one of his toes. Recast Compl. 7, ECF No. 12. Plaintiff opted for a treatment that would clear the infection relatively quickly but "could cause . . . liver issues." *Id.* Plaintiff's liver function was tested and was within normal limits. *Id.* Plaintiff was therefore permitted to take his preferred medication. *Id.*

Plaintiff states he "continued to have medical issues in the days to come, weeks, and years that followed this visit" that included itching, weight loss, and sores and rashes. Recast Compl. 7, ECF No. 12. In addition, Plaintiff's toe infection resurfaced. *Id.* In 2019, however, Plaintiff was "let off lock down" at Reidsville, and "a lot of the issues [he] had been experiencing had seemed to start going away and others [Plaintiff] just didn't pay much attention to because they only cause [him] issues from time to time." *Id.* Plaintiff thus "assumed [his] body was still trying to rea[d]just from the items that was being put in [his] trays while on lock down not being put in anything [he] was consuming any longer." *Id.* At some point between August and November of 2022, Plaintiff was evaluated by medical professionals and told he "was in overall good health by the medical nurse who performed [his] lab test, after lab result was returned, and that no issues was found." *Id.* at 7. It appears this blood work was performed at Coffee County Correctional Facility. *See*

*id.* at 7-8.  Plaintiff was transferred to Hancock State Prison sometime in late 2022.  *Id.*

Sometime around April of 2023, while he was at Hancock, Plaintiff suffered a recurrence of his toe infection.  Recast Compl. 7-8, ECF No. 12.  Plaintiff requested that he be given the same medication he'd been prescribed previously, and a nurse told him his liver function would have to be tested again.  *Id.* at 8.  While the nurse was reviewing Plaintiff's records, however, she asked Plaintiff what he had been told about his health at Coffee County Correctional Facility.  *Id.*  When Plaintiff responded he had been told he was in good health, the nurse asked, "Are you sure?"  *Id.*  Plaintiff surmises that this comment indicated Plaintiff was not actually in good health.  *Id.*  When Plaintiff asked the nurse "what was wrong," she told Plaintiff "she just wanted to test [his] liver functions and make sure [he] wasn't having any liver issues before putting [Plaintiff on] meds" for the toe infection.  *Id.*

At this point, Plaintiff became concerned that medical staff was hiding something from him, and he began to ask to view his medical records.  Recast Compl. 8, ECF No. 12. After filing sick calls, threatening to file grievances, and having his sister contact prison officials regarding his records, Plaintiff was ultimately given "a thin file" containing only some of his records, and not the records he had been seeking to view and copy.  *Id.* at 8-9. Plaintiff also states that he "spoke with the H.S.P. nurse about Hep B issues and [his] liver functions," and this nurse encouraged Plaintiff "to take labs again and the H.S.P. lab nurse . . . came and drew [his] blood."  *Id.* at 10.  Plaintiff apparently saw "another nurse" who later provided him these lab results, but Plaintiff was not permitted to review or make copies of his medical records at this time.  *Id.*

10

While all this was happening, an unidentified nurse against whom Plaintiff had previously filed a lawsuit "informed two GD inmate orderlies that worked in medical . . . that [Plaintiff] had Hep B." Recast Compl. 9-10, ECF No. 12. These inmates apparently informed other GD gang members that Plaintiff had hepatitis, that he had contracted the disease "from homosexual activity," and that he was filing complaints against staff. *Id.* at 11. Defendant Mitchal, the chief counselor, also provided these inmates with information concerning the grievances and lawsuits Plaintiff had filed against Hancock staff. *Id.* at 10-11. On May 21, 2023, GD inmates "called [Plaintiff] in a cell at H.S.P.," questioned Plaintiff, and beat and seriously injured him when they were not satisfied with [his] answers." *Id.* Plaintiff was taken to Baldwin Hospital where he informed nurses about his liver issues and consented to blood work. *Id.* at 11. Plaintiff stayed at the hospital "until blood test results were returned" to one of the Baldwin Hospital nurses. *Id.* This nurse, who is not named as a Defendant in this action, told the officers who brought Plaintiff to the hospital that she knew "what was wrong with" Plaintiff, but when Plaintiff inquired about her statement, she "refused to tell" him what she meant. *Id.* Plaintiff never received the results of these blood tests or was told exactly why his blood was being tested. Objs. 5, ECF No. 16. When Plaintiff returned to prison, he was placed in lockdown and medical staff refused to provide him with pain pills or remove the stitches in his face. Recast Compl. 11-12, ECF No. 12.

Plaintiff was transferred to Macon State Prison on or about May 30, 2023. Recast Compl. 11, ECF No. 12. Plaintiff states he told the intake nurse about his liver issues and that Hancock prison officials had refused to remove his stitches, but the intake nurse did

not take his vitals, take his blood pressure, or do "anything else they supposed to due [sic] when new arrivals come" to the prison. *Id.* Plaintiff also contends he filed "sick calls about [his] medical issues and request[ed] copies of [his] medical records," but he "was never seen by medical." *Id.* More specifically, Plaintiff states he complained about his "liver issues, lost of weight [sic], tooth issues, foot infection issues, Hep B issues, . . . continual intching [sic] issues, [and] request to make copies of blood work test results from Baldwin Hospital." *Id.* Plaintiff also complained about this lack of care to prison and medical staff supervisors. *Id.* at 12-13. Plaintiff alleges he was not seen for these issues, but he was seen when he filed a sick call regarding injuries he received during a use of force against him on August 2 and 3, 2023. *Id.* at 13.

Plaintiff also contends that when he arrived at Macon State Prison, officials placed him in the same cell with an inmate who had "close ties" to the inmates who attacked him at Hancock. Objs. 6, ECF No. 16. Plaintiff further contends this individual is currently working with other gang members and prison staff, and he also attempted to steal property from Plaintiff, which led to an altercation in which Plaintiff broke his finger. *Id.* Plaintiff alleges that prison staff refused to separate Plaintiff from this inmate even after their altercation. *Id.* Plaintiff thus claims that prison officials have "placed [him] right back in harms way" at Macon State Prison. *Id.*

In sum, Plaintiff contends that Defendants' actions and inaction violates his constitutional rights, and as a result he seeks monetary relief, a jury trial, costs, and "any just additional relief." Recast Compl. 6, ECF No. 12.

### III.    Plaintiff's Claims

####    A.    *Failure to Provide Adequate Medical Treatment*

Plaintiff primarily alleges that Defendants failed to provide him adequate medical treatment.  These allegations give rise to claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.  *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  To show that a state actor was deliberately indifferent to his serious medical needs, "a plaintiff must satisfy both an objective and a subjective inquiry."  *Id.* at 1243.  A plaintiff must first "set forth evidence of an objectively serious medical need*"* and then prove that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need."  *Id.*  In other words, the defendant must both "know of and then disregard an excessive risk to the prisoner."  *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).  For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).  A serious medical need can also arise if "a delay in treating the need worsens the condition."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).  "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'"  *Id.* (quoting *Farrow*, 320 F.3d at 1243).

Plaintiff alleges that he suffered from several different medical conditions for which Defendants failed to provide him adequate treatment.  First, Plaintiff states he tested positive for Hepatitis B in Reidsville State Prison in the spring of 2017.  Recast Compl. 5,

ECF No. 12.  Hepatitis can be considered a serious medical need.  *See, e.g., Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017).  But to state an actionable § 1983 claim, Plaintiff must also allege that Defendants acted with deliberate indifference to his Hepatitis diagnosis.  Chronic Hepatitis may not require treatment other than routine monitoring to determine whether the condition warrants medical intervention.  *See, e.g., Hoffer v. Sec'y*, 973 F.3d 1263, 1273 (11th Cir. 2020) (noting that "diagnosing, monitoring, and managing conditions—even where a complete cure may be available—will often meet the 'minimally adequate medical care' standard that the Eighth Amendment imposes"); *see also Black v. Ala. Dep't of Corrs.*, 578 F. App'x 794, 795 (11th Cir. 2014) (per curiam) (holding prison officials were not deliberately indifferent to inmate's chronic Hepatitis C infection where inmate's liver function was "routinely monitored" to determine whether condition warranted further treatment, but "none of the results showed any developing problems with regard to the virus").

It appears Plaintiff is now alleging that his condition has worsened and may require treatment; he states his most recent liver function tests were "above the level it was told to the Plaintiff it should have been at."  Objs. 4, ECF No. 16.  Plaintiff also contends that Hepatitis is the only condition with which he has been diagnosed, and thus his various other afflictions—to include itching, weight loss, unspecified dental issues, and sores or rashes—are necessarily linked to his infection.  *See id.* at 4-5.  Plaintiff further claims he notified GDC Medical Director Lewis; Macon State Prison medical providers Williams, Bolgan, Bradford, Harrison, and Kimbro; Macon State Prison Medical Unit Manager Ingram; and Wardens Jefferies and Smith about his Hepatitis diagnosis, symptoms, and lack of

treatment, but they have refused to answer his questions about his condition or ensure that he received any treatment despite being in a position to do so.  Recast Compl. 12-13, ECF No. 12; *see also* Objs. 5, ECF No. 16.  In an abundance of caution, the Court finds Plaintiff's claims that these Defendants have been deliberately indifferent to what may be a worsening Hepatitis infection should therefore proceed for further factual development.

It is unclear whether Plaintiff is also alleging Defendants have been deliberately indifferent to what Plaintiff characterizes as an infection in his toe.  To the extent Plaintiff is alleging that Defendants have failed to provide him with adequate medical care for this infection, Plaintiff has failed to state a claim.  Plaintiff has not described his symptoms or alleged any other facts indicating that his toe infection was objectively serious enough to rise to the level of a serious medical need, and he has alleged that Defendants provided him medication to treat the infection after determining his liver was functioning appropriately.  Plaintiff has therefore failed to state an Eighth Amendment claim with respect to his toe infection.

To the extent Plaintiff is alleging that Defendants failed to provide him adequate medical treatment after he was assaulted by other inmates, Plaintiff has also failed to state an actionable claim.  Plaintiff states he was treated at Baldwin Hospital for his injuries and returned to Hancock State Prison lockdown.  While at Hancock, unspecified prison officials refused to remove Plaintiff's stitches from his face or provide him with any pain medication.  Recast Compl. 11-12, ECF No. 12.  Plaintiff, however, does not allege any facts associating any named Defendant with this alleged failure to provide him with medical care.  As such, this claim should be dismissed without prejudice.  *Douglas v. Yates*,

535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).

Finally, Plaintiff briefly mentions that Defendant Mitchal also "continually denial [sic] on medical treatment out of retaliation for Petitioner's grievance filings," Recast Compl. 16, ECF No. 12, but Plaintiff does not explain how Defendant Mitchal actually caused any denial of medical treatment or show that she was in a position to provide Plaintiff with any medical treatment or direct others to do so. Any medical treatment claims Plaintiff intended to raise against Defendant Mitchal are therefore also subject to dismissal. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that two defendants who were not medical professionals could not be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

### B.   Failure to Provide Medical Records

Plaintiff also contends that Defendants' alleged failure to provide him with his medical records violates his constitutional rights. Many courts—including this one—have found that "[w]hile inmates have a constitutional right of access to medical care, they have no concomitant constitutionally protected right of review, or access to, their prison medical or mental health records." *Smith v. Myers*, Civil Action No. 2:16-CV-919-ALB, 2019 WL 9904324, at *5 (M.D. Ala. Dec. 30, 2019) (collecting cases); *Brannon v. Thomas Cnty. Jail*, No. 6:06-CV-36 (WLS), 2007 WL 1701815, at *10 (M.D. Ga. June 7, 2007) ("There is no per se 'constitutional right' to have a jail or prison facility provide a prisoner with a

16

copy of his medical records or criminal records."), *aff'd* 280 F. App'x 930 (11th Cir. 2008); *see also Granado v. Tafoya-Lucero*, No. 23-cv-95-DHU-DLM, 2023 WL 6143544, at *5 (D.N.M. Sept. 20, 2023) ("To the extent defendants have denied Plaintiff's access to his records, such conduct is not actionable under § 1983."); *Veenstra v. Idaho St. Bd. of Corr.*, Case No. 1:15-cv-00270-EJL, 2017 WL 4820353, at *6 (D. Idaho Oct. 24, 2017) (finding no "federal or state-created liberty interest in being allowed to review their own medical records while incarcerated"), *aff'd* 785 F. App'x 390 (9th Cir. 2019).  To the extent Plaintiff is claiming that Defendants violated his constitutional rights by simply failing to provide his medical records, this failure does not amount to a constitutional claim.[3]

### C. Claims Related to Assaults

#### 1. Retaliation Claims against Defendant Mitchal

Plaintiff next alleges that Defendant Mitchal, the chief counselor at Hancock, retaliated against him by providing inmate orderlies with information concerning Plaintiff's grievances and lawsuits filed against medical staff.  Recast Compl. 11-12, 16, ECF No. 12.  It is well established that an adverse action imposed in retaliation for a

---

[3] The failure to provide an inmate with records could conceivably infringe on an inmate's right to access the courts.  "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002)).  "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'" *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (alterations and omission in original) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).  Plaintiff has not alleged any facts suggesting that his inability to access his medical records has frustrated or impeded any nonfrivolous legal claim.

prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam). To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

Plaintiff has alleged Defendant Mitchal retaliated against him by providing his confidential information to inmates who were known gang members. These gang members worked with or for medical staff on what appear to have been desirable details—indeed, Plaintiff "had been trying to get a job in the medical dept" at Hancock during this time. Recast Compl. 10, ECF No. 12. And these gang members subsequently assaulted and "seriously injured" Plaintiff after questioning him about these grievances. *Id.* It is hard to imagine what innocuous purpose Defendant Mitchal would have had for providing this information to these inmates. Construing Plaintiff's allegations liberally, and taking them as true, as the Court must at this stage, the Court cannot say that Plaintiff's claims that Defendant Mitchal retaliated against him are entirely frivolous. These claims shall therefore proceed for further factual development.

<ol start="2">
<li>Deliberate Indifference to Safety Claims</li>
</ol>

Plaintiff next alleges that when he arrived at Macon State Prison, prison officials placed him in the same cell as an inmate with "close ties" to the inmates who attacked Plaintiff at Hancock State Prison. Objs. 6, ECF No. 16. Plaintiff also alleges that his current cellmate is "working with Blood orderlies" and prison staff and has helped other

gang members steal Plaintiff's property. *Id.* Plaintiff further states that he has been involved in at least one physical altercation due to his current placement. *Id.* These allegations give rise to a claim that Defendants have been deliberately indifferent to his safety. This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner asserting an Eighth Amendment failure-to-protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk. *Id.* at 1332.

The subjective component of deliberate indifference requires a prisoner to allege facts showing that a prison official had "'more than a generalized awareness of risk'" to the prisoner. *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)). The inmate can do this by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)). The objective prong requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways

to reduce the harm but knowingly or recklessly declined to act." *Id.* (internal quotation marks omitted).

Plaintiff's claims in this case are based upon prison officials' knowledge of the specific threat posed to him by his former cellmate and perhaps other gang members. Plaintiff alleges he complained to Warden Jeffries about "physical violence by staff as well as physical threats made by inmates that have been conspiring with staff to harm [Plaintiff's] life for my filing against staff which includes gang members, orderlies, and even religious organizations."  Attach. 1 to Recast Compl. 2, ECF No. 12-1.  A generous reading of the Recast Complaint also suggests that Plaintiff informed Defendant Smith, the former warden, about the danger he faced at Macon State Prison. *Id.* (describing substance of complaints as including "all of the issues related to me at various times of the past, including threats made, [and] situations that has transpired at previous camps and since I have arrived at MSP . . . .").  As wardens of the prison, these individuals would have had the authority to change Plaintiff's housing assignment, but they did not.  The Court will therefore permit Plaintiff's deliberate indifference to safety claims to proceed against Defendants Jefferies and Smith.  Because Plaintiff does not specifically identify any other individual who may have had subjective knowledge of the danger facing Plaintiff, his remaining claims against the other named Defendants should be dismissed without prejudice.[4]

---

[4] Plaintiff's allegations tend to conflate his medical treatment and deliberate indifference to safety claims, and it is thus largely unclear to whom Plaintiff directed his various complaints.  But even if Plaintiff advised the remaining Defendants at Macon State Prison of his concerns about his housing—which he does not clearly allege he did—these

## IV.     Conclusion

In accordance with the foregoing, the November 9, 2023 Order and Recommendation (ECF No. 14) is **WITHDRAWN.**  Plaintiff's motions for leave to proceed *in forma pauperis* (ECF Nos. 3, 13) are **GRANTED,** and the following claims shall proceed for further factual development:  (1) claims that Defendants Lewis, Williams, Bolgan, Bradford, Jefferies, Ingram, Kimbro, Harrison, and Smith were deliberately indifferent to Plaintiff's Hepatitis B diagnosis; (2) retaliation claim against Defendant Mitchal; and (3) claims that Defendants Smith and Jefferies were deliberately indifferent to Plaintiff's safety at Macon State Prison.  It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.**  Plaintiff's motion for ruling on the pending motions (ECF No. 15) is **DENIED as moot,** and the Clerk may **TERMINATE** Defendant John Doe from the caption of this case given that Plaintiff has not named any Doe Defendants in his Recast Complaint.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this

---

Defendants all appear to be medical providers.  It is therefore unlikely that these individuals would have been authorized to move Plaintiff on the basis of these allegations.  As such, Plaintiff has not stated a deliberate indifference to safety claim against these medical providers.  *See, e.g., LaMarca v. Turner*, 995 F.2d 1526, 1535-36 (11th Cir. 1993) (noting that "to demonstrate an official's deliberate indifference, a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition").

Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Mitchal, Lewis, Williams, Bolgan, Bradford, Jefferies, Ingram, Kimbro, Harrison, and Smith, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected

to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.  The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any

time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed

FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 30th day of January, 2024.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge